UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ANDREAS MEYER, | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 25-mc-91551-ADB |
| GINKGO BIOWORKS HOLDING INC., | * | |
| | * | |
| Respondent. | * | |
| | * | |
| | * | |
| | * | |

**<u>MEMORANDUM AND ORDER</u>**

BURROUGHS, D.J.

Petitioner Andreas Meyer seeks discovery in the United States for use in Swiss proceedings pursuant to 28 U.S.C. § 1782. The Court previously granted Petitioner's <u>ex parte</u> application, [ECF No. 2]. [ECF No. 9]. Now before the Court is Respondent Ginkgo Bioworks Holding Inc.'s motion to vacate the Court's order and quash the subpoena, [ECF No. 12]. For the following reasons, the motion is **<u>GRANTED IN PART</u>**.

I.      **BACKGROUND**

        A.      **Factual Background**

The underlying dispute in this matter concerns the aftermath of the acquisition of a biotech company by Ginkgo International ("GI"), Respondent's wholly owned subsidiary. The acquired business, FGen, is Swiss; Respondent and GI are both Delaware corporations with principal places of business in Massachusetts. [ECF No. 2 ("Pet.") ¶ 2]; [ECF No. 14 ("Tepichin Decl.") ¶¶ 4–6]. Petitioner owned 25 percent of FGen prior to its acquisition. [Pet. ¶ 4]. The

agreement by which GI acquired FGen (the "Share Purchase Agreement" or "SPA") required GI to pay FGen's prior shareholders additional "milestone payments" if, after being acquired, FGen hit certain performance targets. [Id. ¶ 6]. Whether those targets had been met would be determined by the Joint Steering Committee ("JSC"), which consisted of one GI representative and one FGen representative. [Id. ¶¶ 6–7]. As time went on, disputes arose between the former FGen shareholders and GI concerning payment for certain performance milestones. [Id. ¶ 7]. Petitioner is now preparing a lawsuit against GI in Swiss court, arguing that GI failed to make certain required payments, [id. ¶ 9], and, as relevant here, that Respondent gave instructions to GI's JSC representative with the purpose of reducing the number of milestones that were recognized for payment to the former FGen shareholders, [id. ¶¶ 7, 12–15].

### B.    Procedural History

On November 21, 2025, Petitioner filed the at-issue discovery application, seeking to serve a subpoena on Respondent. [ECF No. 2]. The subpoena included requests for communications and documents concerning the JSC, definition of milestones, the performance of FGen in certain programs, and communications with customers; it also sought deposition testimony from Respondent concerning discussions and decisions of the JSC, discussions internal to Respondent, discussions between Respondent and GI related to the JSC and FGen, and the performance of FGen in certain programs.[1] The Court granted the application on November 26, 2025, [ECF No. 9], and on December 23, 2025, Respondent moved to vacate the Court's order and quash Petitioner's subpoena, [ECF No. 12]. Petitioner opposed the motion on January 13, 2026, [ECF No. 18], and Respondent replied on January 27, 2026, [ECF No. 22].

---

[1] Because the subpoena was filed under seal, [ECF No. 2-10], the Court discusses it in general terms.

**II.     LEGAL STANDARD**

Section 1782 authorizes interested persons to seek discovery in the United States for use in foreign proceedings.  See 28 U.S.C. § 1782.

> Today's § 1782 is the product of over 150 years of Congressional effort and manifests the intent to provide "federal-court assistance in gathering evidence for use in foreign tribunals."  The text of § 1782 provides that granting discovery is proper only if: 1) the person from whom discovery is sought "resides or is found" in the district where the court sits; 2) the request seeks evidence (the "testimony or statement" of a person or the production of a "document or other thing") "for use in a proceeding in a foreign or international tribunal"; 3) the request is made by a foreign or international tribunal or by "any interested person"; and 4) the material sought is not protected by "any legally applicable privilege."  28 U.S.C. § 1782(a). If all of these statutory requirements are met, the district court is authorized, but not required, to provide judicial assistance by permitting discovery.

In re Schlich, 893 F.3d 40, 46 (1st Cir. 2018) (first quoting Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 247 (2004); and then quoting 28 U.S.C. § 1782).  Courts must exercise discretion "in light of the twin aims of the statute: 'providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts.'"  Id. at 46–47 (quoting Intel, 542 U.S. at 252).  Additionally, four particular factors established by the Supreme Court in Intel, 542 U.S. at 264–65, "bear consideration," Schlich, 893 F.3d at 47 (quoting Intel, 542 U.S. at 264):

> The first factor to consider is whether the person from whom discovery is sought is a party to the foreign proceeding, in which case "the need for § 1782(a) aid generally is not as apparent" because a "foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." [Intel, 542 U.S. at 264].  The second factor . . . was adopted from a Senate Report explaining that a court "may take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance."  Id. (citing S. Rep. No. 88-1580, at 7 (1964), as reprinted in 1964 U.S.C.C.A.N. 3782, 3788 . . . ).  The third factor to consider is whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States."  Id. at 265 . . . .  Finally, the fourth factor addresses whether the request is "unduly intrusive or burdensome" to the extent that it should either be "trimmed" or rejected outright. Id.

3

Schlich, 893 F.3d at 47.  "In sum, a district court must first determine whether the statutory requirements are met.  If they are, the district court should then consider the four discretionary factors before arriving at a decision."  Id.

III.    **DISCUSSION**

The parties agree that the application satisfies the minimum requirements of § 1782, see [ECF No. 13 at 8], so the Court's inquiry is focused on the discretionary Intel factors: (1) Respondent's status in the foreign proceedings, (2) the nature of the foreign proceedings and the foreign tribunal's receptivity to U.S. judicial assistance, (3) circumvention of foreign discovery rules or other policies, and (4) the intrusion or burden caused by the request.  The Court considers each in turn.

### A.    Respondent's Status in the Foreign Proceedings

Respondent contends that although it is not formally a party to the foreign proceedings, the subpoena is being used to reach materials in the possession of "the anticipated defendant in the Swiss litigation," GI.  [ECF No. 13 at 16].  Respondent also promises to provide to GI, for purposes of production to the Swiss court, any documents in Respondent's possession that the Swiss court orders GI to produce.  [Id. at 18]; [Tepichin Decl. ¶ 11].

Petitioner acknowledges that "[w]here the target of . . . discovery is a mere affiliated custodian," this factor may disfavor granting the petition, [ECF No. 18 at 7], but he contends that Respondent played its own role in the underlying events and is more than a "mere custodian of Gin[kgo] International's papers."  See [id. at 7–8].  Petitioner also argues that Respondent's promise to provide documents to GI for production to the Swiss court may be illusory because the Swiss court may not have jurisdiction over Respondent, and that the promise does not

4

address "specific consent to jurisdiction over corporate testimony," which is part of the discovery sought by Petitioner.  [Id. at 6].

As Petitioner recognizes, [ECF No. 18 at 7], the Court must "look beyond the parties actually named in the petition to determine whether the party from whom documents are sought is the 'real party' in interest."  In re Hand Held Prods., Inc., No. 24-mc-91378, 2024 WL 5136071, at *5 (D. Mass. Oct. 24, 2024) (quoting In re Belparts Grp., No. 21-mc-00062, 2021 WL 4942134, at *3 (D. Conn. Oct. 22, 2021)).  Thus, because the Swiss tribunal, which has jurisdiction over GI, "can itself order [GI] to produce [the] evidence," Intel, 542 U.S. at 264, insofar as the discovery sought involves documents related to GI's activities on the JSC,[2] assistance from this Court is unnecessary, and this factor "weighs against" permitting the discovery.  In re Gen. Elec. Co., No. 22-cv-91125, 2022 WL 16720425, at *5 (D. Mass. Nov. 4, 2022).[3]

As for testimony and documents concerning Respondent's own activities independent of communications with GI, Petitioner has not shown how that information—which, by definition, would not have borne on GI's actions—will be relevant to the foreign proceeding.  See Schlich, 893 F.3d at 52 (noting that "a request for discovery . . . that is plainly irrelevant to the foreign proceeding will fail to meet the statutory 'for use' requirement, and must be denied" and that

---

[2] This includes but is not limited to its approach to defining and characterizing milestone payments, any communication between Respondent and GI on that topic, and any other "documents and witnesses . . . within the [Swiss] court's jurisdictional reach," In re Gen. Elec. Co., No. 22-cv-91125, 2022 WL 16720425, at *5.

[3] Petitioner's concern that Respondent will not be subject to the Swiss court's jurisdiction appears misplaced.  Respondent's commitment, see [Tepichin Decl. ¶ 11], involves production ordered by the Swiss court from GI, not from Respondent; it guarantees that the distinction between GI and Respondent as entities will not prevent the Swiss court from reaching any documents related to GI that it might request.

"even when a discovery request is sufficiently relevant . . . , there is nothing that prevents district courts from considering relevancy under the discretionary Intel factors").  This factor weighs in Respondent's favor.

### B.    The Nature and Receptivity of the Proceedings

Respondent submits that the anticipated Swiss proceedings favor quashing the subpoenas for two reasons: first, because the SPA contained a forum-selection clause requiring a Swiss tribunal, see [ECF No. 13 at 4–5]; [Pet. ¶ 8]; [ECF No. 2-4 §§ 12.1, 12.2], and "Swiss courts are, if anything, even more deferential than United States courts to the enforcement of forum-selection clauses," [ECF No. 13 at 13]; and second, because Swiss law would treat the evidence generated through United States discovery as "alien . . . and potentially inadmissible," [id. at 15 (quoting Venequip, S.A. v. Caterpillar, Inc., No. 21-cv-06297, 2022 WL 823856, at *2 (N.D. Ill. Mar. 18, 2022), aff'd sub nom. In re Venequip, S.A. v. Caterpillar Inc. ("Venequip"), 83 F.4th 1048 (7th Cir. 2023))].  Respondent also asserts that "courts in the Canton of Zurich . . . have refused to recognize deposition testimony obtained through U.S. pretrial discovery." [ECF No. 13 at 15 (citing [ECF No. 15 ("Pfisterer Decl.") ¶ 40])].  Petitioner answers that the receptivity inquiry should turn largely on the "relevance of the proposed discovery to the issue in the foreign proceeding," [ECF No. 18 at 8], and contests the accuracy of Respondent's characterization of Swiss law, [id. at 10].

The inquiry under the second factor concerns whether the evidence unearthed in discovery is likely to be considered by the foreign tribunal.  E.g., Sandra Holding Ltd. v. Al Saleh, No. 18-mc-91406, 2019 WL 3072197, at *4 (D. Mass. July 15, 2019); Minis v. Thomson, No. 14-cv-91050, 2014 WL 1599947, at *3–4 (D. Mass. Apr. 18, 2014).  Accordingly, the Court considers this factor in the framing offered by Respondent's second argument, which is whether

6

the Swiss tribunal would be likely to admit the evidence generated by United States discovery. Mindful of the risks inherent in "district judges . . . try[ing] to glean the accepted practices and attitudes of other nations from what are likely to be conflicting and, perhaps, biased interpretations of foreign law," Euromepa S.A. v. R. Esmerian, Inc., 51 F.3d 1095, 1099 (2d Cir. 1995), and without sufficient evidence to resolve this factor in either party's favor, the Court treats this factor as neutral in its analysis.  See In re Porsche Auto. Holding SE, No. 19-mc-91129, 2019 WL 5806913, at *7 (D. Mass. Nov. 6, 2019), report and recommendation adopted, 2020 WL 813710 (D. Mass. Feb. 19, 2020), aff'd, 985 F.3d 115 (1st Cir. 2021)); Venequip, 83 F.4th at 1056–56 (concluding that lower court, which had "considered th[e] second Intel factor with some caution," id. at 1056, had "faithful[ly] appli[ed] . . . the Intel factors," id. at 1057).

### C.    Circumvention

Respondent argues that Petitioner seeks to circumvent the SPA's forum-selection clause and that permitting the disputed discovery would deprive Respondent of the benefit of its bargain.  [ECF No. 13 at 12].  It contends that the parties to the SPA "bargained for adjudication in a Swiss court under Swiss law," at least in part because the "Swiss forum . . . [provides] a procedural system that is streamlined, predictable, and deliberately excludes broad pre-trial discovery."[4]  [Id. at 9].  Respondent also asserts that the Supreme's Court analysis of forum-selection clauses in another discretionary context, venue transfer pursuant to 28 U.S.C. § 1404(a), favors giving the forum-selection clause here "substantial, if not 'controlling[,']

---

[4] Respondent has provided extensive information about the differences between proof gathering under Swiss and United States procedure, see [Pfisterer Decl. ¶¶ 10–43], the general accuracy of which Petitioner does not contest, see [ECF No. 18 at 11–16], and which tends to be confirmed by other sources, see, e.g., Venequip, S.A. v. Caterpillar, Inc., 2022 WL 823856, at *3 (noting that the "differences between Swiss and U.S. procedural law, including with respect to discovery" are "significant" and tend to prevent "robust early discovery")

weight in [the Court's] discretionary analys[is]." [Id. at 10 (quoting Atl. Marine Constr. Co. v. U.S. Dist. Ct., 571 U.S. 49, 63 (2013))]. Finally, it argues that Venequip and similar cases, [ECF No. 13 at 13 n.4 (collecting cases)], provide an on-point analytical framework that the Court should replicate here. [ECF No. 13 at 11].

Petitioner responds that the parties' agreement left open the possibility of § 1782 discovery because the SPA's choice-of-law clause, [ECF No. 2-4 § 12.1], only governs substantive law, not discovery procedure, [ECF No. 18 at 12], and the SPA's forum-selection clause, [ECF No. 2-4 § 12.2], similarly specifies forum and venue but does not specifically limit discovery. Petitioner encourages the Court to set aside any analogy to Venequip and similar cases on the basis that they involved different facts and were decided in other circuits. [ECF No. 18 at 14–16]. Finally, Petitioner argues that Respondent has failed to adduce any evidence or argument that Petitioner is trying to circumvent Swiss proof-gathering requirements. [ECF No. 18 at 13].

The "fact that more evidence may be obtained via a § 1782 application than via the foreign discovery procedures does not amount to circumvention and does not mitigate against approval of the application," Illumina Cambridge v. Complete Genomics, Inc., No. 19-mc-80215, 2020 WL 820327, at *5 (N.D. Cal. Feb. 19, 2020) (collecting cases); see also Mees v. Buiter, 793 F.3d 291, 303 n.20 (2d Cir. 2015) ("'[P]roof-gathering restrictions' are best understood as rules akin to privileges that prohibit the acquisition or use of certain materials, rather than as rules that fail to facilitate investigation of claims by empowering parties to require [others to] provide information."). On the other hand, "district courts must be alert" for improper applications of § 1782, such as "gratuitously forcing [one's] opponent to proceed in two separate court systems[,] . . . trying to harass the defendant . . . [or] swamping a foreign court with fruits

of American discovery that would be inadmissible in an American court." Heraeus Kulzer,

GmbH v. Biomet, Inc., 633 F.3d 591, 594 (7th Cir. 2011). Among the "things to watch out for

are a forum-selection clause in a contract, which might indicate the parties' preference for a court

system that doesn't contemplate the level of compulsory process available in America; and a

party's effort to combine the substantive law of a foreign country with the expansive discovery

opportunities available in the United States." Id. at 595. And while discussions of

circumvention sometimes use the phrase "bad faith," e.g., Porsche Auto. Holding, 2019 WL

5806913, at *8, bad-faith requests are just one mode of circumvention. See, e.g., In re Pro-Sys

Consultants & Neil Godfrey, No. 16-mc-91016, 2016 WL 4154306, at *2 (D. Mass. Aug. 5,

2016) (framing the inquiry as whether petitioner was "engaged in an effort to thwart [a limitation

imposed by the foreign tribunal]"); In re Veiga, 746 F. Supp. 2d 8, 25 (D.D.C. 2010) (looking to

whether there is "evidence in the record" that "[a]pplicants have sought to circumvent the proof-

gathering procedures or policies of the foreign tribunals or otherwise brought their applications

in bad faith").

    Here, the presence of forum-selection and choice-of-law clauses that specified both a

Swiss forum and the application of Swiss substantive law reflects an understanding between the

parties that disputes arising out of the SPA would be resolved by Swiss adjudicatory procedure,

including, implicitly, as pertains to discovery.[5] That agreement, in combination with the extent

---

[5] "[W]hether [a] grant of discovery would be an affront to the [foreign nation's] court
or . . . sovereignty," In re Gianoli Aldunate, 3 F.3d 54, 61 (2d Cir. 1993), is an important aspect
of the international legal comity that guides the Court's exercise of its discretion, see Schlich,
893 F.3d at 46. Foreign nations have an interest in the integrity of their particular systems of
dispute resolution, which may incentivize sophisticated parties to adjudicate in their courts as
opposed to in others. Cf. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 260 (1981) (noting the
"local interest in having localized controversies decided at home" (quoting Gulf Oil Corp. v.

to which the discovery sought by Petitioner concerns documents and testimony in GI's control, suggests to the Court that the discovery sought would ultimately enable Petitioner to benefit from a discovery process that he bargained away when agreeing to the SPA. [6] See Banoka S.à.r.l. v. Elliott Mgmt. Corp., 148 F.4th 54, 65–66 (2d Cir. 2025). This factor favors Respondent.

### D.   Intrusion or Burden

Respondent argues that the subpoena is unduly intrusive and burdensome, because it amounts to "discovery of a type and scope fundamentally inconsistent with the . . . forum the parties selected" that would "impose[] substantial burdens . . . and yield little utility in the contemplated Swiss litigation." [ECF No. 13 at 20]. Petitioner responds that the imposition of the discovery he seeks would be minimal and, apart from "generalizations," Respondent does not offer any concrete reasons to conclude that it would be excessively intrusive or burdensome. [ECF No. 18 at 17]. The inquiry under this factor is not, as Respondent suggests, about the consistency of the discovery sought with the foreign tribunal; rather, it is whether the breadth and depth of the discovery sought is excessive such that "it should either be 'trimmed' or rejected outright." Gen. Elec. Co., 2022 WL 16720425, at *7 (quoting Schlich, 893 F.3d at 47). In light of that standard, the Court agrees with Petitioner: there is nothing intrinsic to the information Petitioner seeks or the procedures he proposes for gathering that information that would render this petition unduly burdensome or intrusive for Respondent. This factor favors Petitioner.

---

Gilbert, 330 U.S. 501, 509 (1947))). Diluting the effectiveness of contractual bargains to use a particular nation's judicial system thus risks an affront to the principles that the Court must weigh in its analysis.

[6] The Court was able to resolve this factor by its own review of existing § 1782 law, so it declines Respondent's invitation to analogize to the Supreme Court's venue analysis or rely on the approach in Venequip.

IV.      CONCLUSION

On balance, for the reasons explained above, the Court concludes that discovery is not warranted as to (1) documents or testimony that GI could provide to the Swiss court if directed to do so by that court, including documents in Respondent's possession; and (2) documents or testimony of which GI was unaware, such as evidence concerning Respondent's internal communications, deliberations, and decisions.  The discovery sought by Petitioner appears primarily to concern information in those two categories, though its precise contours are not clear from the parties' briefing.  In light of the Court's discretion to grant or deny discovery pursuant to § 1782, the motion to vacate and quash is **GRANTED IN PART**.  The Court's order, [ECF No. 9], is **VACATED** and the subpoena issued pursuant to that order is **QUASHED**, subject to the following qualifications.

If Petitioner seeks discovery outside of the two categories described above, he may file an amended application and supporting materials within 28 days of this order, setting forth with specificity the information sought and explaining why it does not fall into either category.  Respondent may respond within 28 days of Petitioner's filing, and Petitioner may reply within 14 days of Respondent's response.  If, on the other hand, this order disposes of all of the discovery sought by Petitioner, Petitioner should file a status report within 28 days indicating that he does not intend to pursue the application further, at which point the Court will dismiss the action without prejudice to another application being filed if necessary when the Swiss proceedings are more advanced.

        **SO ORDERED.**

June 5, 2026                                                     */s/ Allison D. Burroughs*
                                                                ALLISON D. BURROUGHS
                                                                U.S. DISTRICT JUDGE